Joetta THORNTON, Individually and as mother and Natural
Guardian of Amanda Lampkin, a Minor *v.* Aaron SQUYRES,
C. Thomas Pearson, Jr. and Marshall Dale Evans

94-199                                                    877 S.W.2d 921

Supreme Court of Arkansas
Opinion delivered June 20, 1994

*Bailey Law Firm*, by: *Frank H. Bailey*, for appellant.

*Davis, Cox & Wright*, by: *Kelly Carithers* and *John G. Trice*, for appellees.

TOM GLAZE, Justice. On May 22, 1992, appellant Joetta Thornton was served with a complaint for divorce filed by her first husband and the father of her oldest child, Amanda. In that complaint, the husband requested custody of Amanda. On June 3, Thornton retained the legal services of appellee Aaron Squyres with the payment of $200 and the understanding that she would pay an additional $100 as soon as possible. At the time, Squyres was a staff attorney with the Legal Clinic with offices in Fayetteville and Harrison. Thornton saw Squyres at the Harrison office which she understood was only opened on Wednesdays.

During her visit, Thornton contended Squyres assured her that an answer to the complaint would be drafted that evening, that he would contact the other attorney that same evening with a view toward settlement, that he would file the written answer the next morning, and that he would send her a copy of the answer. Squyres deposited Thornton's check for $200 into the account for the Legal Clinic. After failing to receive a copy of the answer and failing to hear from Squyres, Thornton made numerous calls to Squyres's office in Harrison, which went unanswered or were automatically switched to another number which also went unanswered. Finally on July 1, Thornton made contact with a person in the office who indicated that he would take care of the matter.

On July 2, Amanda's father and a city policeman showed up at Thornton's home with a court order granting custody of Amanda to her father. The order had been entered that morning as a default judgment. In reaction to the court order, the presence of the policeman, and the loss of her child, Thornton experienced periods of crying, loss of sleep and appetite, and vomiting when she did eat. Pursuant to the default order, Amanda remained in the custody of her father for seven days until the order was set aside. Thereafter, Thornton was awarded custody of Amanda.

Thornton filed a complaint in circuit court against Squyres and his employer, the Legal Clinic, for the tort of outrage. Following presentation of Thornton's case-in-chief to the jury, the court granted Squyres's motion for a directed verdict from which Thornton appeals.

█ In determining the correctness of the trial court's action concerning a motion for a directed verdict on appeal, this court views the evidence that is most favorable to the party against whom the verdict is sought and gives it the highest probative value, taking into account all reasonable inferences deducible from it. The motion must be granted if the evidence is so lacking in substance that it would require a jury verdict to be set aside. *Wingate Taylor-Maid Transportation, Inc.* v. *Baker*, 310 Ark. 731, 840 S.W.2d 179 (1992).

█ By definition, the tort of outrage, also known as the intentional infliction of emotional distress, is an intentional tort. *Deitsch* v. *Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992). In order to establish liability, the plaintiff is required to satisfy four elements by showing: (1) the actor intended to inflict emotional distress or willfully and wantonly knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Id.* at 406; AMI Civil 3rd, 404 (1989).

Thornton argues that viewed within the totality of the circumstances and in light of the fiduciary relationship of attorney-client that existed between the parties, Squyres's conduct may be reasonably regarded as extreme and outrageous. She argues Squyres knew or should have known the extreme emotional harm that could result from the loss of her child. Further, the circumstances demonstrated Squyres's total lack of any docket control system in disregard of his clients' interests, his failure to answer phone calls for three weeks, and the failure of Squyres's office to take any action on July 1 when Thornton was eventually able to contact the office. Finally, when confronted with the result of his omission, Thornton avers Squyres implied that

he deliberately did not file an answer because he was not paid in full.

To counter, Squyres argues that Thornton's cause of action lies in a legal malpractice claim because the acts she complains of do not rise to the level of extreme and outrageous behavior sufficient to be considered utterly intolerable in a civilized society. Further, Squyres argues the emotional distress which Thornton experienced was not so severe that a reasonable person could not be expected to endure it, and, nevertheless, he had no way of knowing that Thornton was especially sensitive or vulnerable to injury through mental distress that would be triggered by loss of her child. Finally, Squyres argues his conduct was not intentional.

Although we in no way countenance the manner in which Squyres handled Thornton's case against her husband, Squyres's conduct was not a basis for filing a tort of outrage action. This court first recognized such an action in *M.B.M. Co.* v. *Counce*, 268 Ark. 269, 569 S.W.2d 681 (1980), by stating that one who by extreme and outrageous conduct willfully or wantonly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress. The *Counce* court further defined extreme and outrageous conduct as being so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.

In directing a verdict in Squyres's favor, the trial judge offered the following insightful remarks:

> I think I even announced it to the jury panel today, [that] I thought what we were trying is a legal malpractice action. [Counsel] has chosen not to pursue a legal malpractice action, but, rather, a tort of outrage, a cause of action which has not really been very well developed in the Arkansas court system. This Court is just rather dubious that this is a tort of outrage. To me, this is just a matter of negligence on the part of an attorney. And . . . an attorney malpractice action would be the appropriate remedy here.

\* \* \*

[I]f this is a tort of outrage, then virtually any act of legal malpractice touching and affecting peoples' lives is also a tort of outrage. . . . I had an attorney here three months ago who failed to file an answer in time, which resulted in a judgment being entered against his client. There was emotional trauma that would attach under those circumstances. The language that's used in connection with the tort of outrage asks for something more. It's punitive in nature. That's the whole reason the tort of outrage arises, is that any time a person does this we've got to punish them for violating, in almost a penal way, the customs of society.

The trial judge was correct. The tort of outrage action is not one that can merely be substituted for a legal malpractice claim which involves inattentive, unprofessional or negligent action of an attorney. Obviously, Thornton suffered emotional distress over the temporary loss of custody of her daughter, and we are sensitive to the mental trauma she experienced in these circumstances. However, Thornton's and her husband's divorce suit involved a contested fight over the custody of their daughter, and in such litigation, the possible loss of custody, temporary or permanent, is always an issue to be confronted by both parents. As to Squyres's own conduct which led to what temporarily occurred to Thornton in her custody battle with her husband, we cannot view it as being so extreme in degree as to go beyond all bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized society. Merely describing such conduct as outrageous does not make it so. *Ross* v. *Patterson*, 307 Ark. 68, 817 S.W.2d 418 (1991).

In conclusion, Squyres filed a motion seeking award of costs for a supplemental abstract. Because the supplemental abstract was not necessary for an impartial understanding of this appeal, we deny his motion.

For the reasons above, we affirm.

NEWBERN, J., not participating.