Angie Renee HICKMAN *v.* Wayne CULBERSON

CA 01-581                                              78 S.W.3d 738

Court of Appeals of Arkansas
Divisions III, IV and I
Opinion delivered June 26, 2002

*Richard N. Dodson*, for appellant.

*Kirk D. Johnson*, for appellee.

JOHN E. JENNINGS, Judge. This is a child-custody case in the context of an earlier paternity suit. Angela Renee Hickman and Wayne Culberson lived together for five years during which time they had a daughter, Chelsea. The parties separated, and Culberson married the woman he had been seeing during his relationship with Hickman. Hickman filed suit to establish paternity so that she could receive child support from Culberson. Following DNA testing confirming that he was Chelsea's father, Culberson counterclaimed for custody of the child. The chancellor awarded custody to Culberson. Appellant argues that the chancellor clearly erred because the custody award is not in Chelsea's best interest. We disagree and affirm.

While we review chancery cases de novo, we reverse only if the chancellor's findings are clearly against the preponderance of the evidence or clearly erroneous. *Fitzpatrick v. Fitzpatrick,* 29 Ark. App. 38, 776 S.W.2d 836 (1989). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Skokos v. Skokos,* 344 Ark. App. 420, 40 S.W.3d 768 (2001). We have often recognized that there is no case in which greater deference should be given to the chancellor's position, ability, and opportunity to see and evaluate the evidence than those involving the welfare of minor children. *Calhoun v. Calhoun,* 3 Ark. App. 270, 625 S.W.2d 545 (1981).

The chancellor found that appellant had financial problems as she had written several hot checks. She had lived with a convicted felon with a violent past and was aware that he had spanked her daughter. Appellant had undergone an abortion while living with this boyfriend. She had moved six or seven times in two years and was fired for unexplained reasons from her previous employment. Appellant took Prozac for her nerves and lied to the court about pulling a knife and threatening to commit suicide. She also gave inconsistent statements about bruises on the child's body. The chancellor noted that, although Dr. Greta Parks felt that Chelsea had been abused, her report was inconclusive, and the abuse was otherwise unsubstantiated.

The chancellor also found that appellee had married the woman who broke up the parties' relationship. The chancellor noted that, while appellee's wife had a good relationship with the child, she had a confrontational relationship with appellant. Appellee's new wife had taken an overdose of pills merely to gain his attention. Appellee did not pay support until a blood test confirmed his paternity, and he did not pay any support while the child was not living with him. Appellee had given up his rights to another child. On the other hand, appellee had lived in the same location for five years and had worked consistently. He appeared to have a stable marriage and attended church regularly.

In awarding custody to the father, the chancellor conceded that he had arrived at his decision with some difficulty. The court was particularly disturbed by appellant's poor choice in men and the fact that she had lied under oath. He ultimately awarded custody to appellee because he could not be certain that appellant would not place Chelsea in a harmful situation. The chancellor found that appellee had matured and that he had a stable marriage, steady employment, and ample support from his family in caring for the child.

■ ■ Pursuant to Ark. Code Ann. § 9-10-113(a) (Repl. 1998), an illegitimate child shall be in the custody of its mother unless a court of competent jurisdiction enters an order placing the child in the custody of another party. Section 9-10-113(b) and (c) provide that a biological father, who has established pater-

nity, may petition the proper court for custody of his child wherein the child resides; however, before the biological father can obtain custody, he must show all of the following: (1) he is a fit parent to raise the child; (2) he has assumed his responsibilities toward the child by providing care, supervision, protection, and financial support for the child; and (3) it is in the best interest of the child to award custody to the biological father.

Appellant argues that it is not in Chelsea's best interest for the court to vest custody in appellee because she was the child's primary caregiver while appellee was pursuing another woman. She contends that the chancellor criticized her choice of men, including appellee, and yet awarded him custody. Appellant maintains that appellee had exercised little visitation and did not get involved with Chelsea until just before they were scheduled to go to court. Appellant points out that the allegations of child abuse were unsubstantiated. Finally, she reminds us that appellee admitted that she was a good mother.

■ ■ In a child custody hearing the court considers what is in the best interest of the child. Ark. Code Ann. § 9-13-101 (Supp. 2001). The primary consideration in awarding the custody of a child is the child's welfare and best interest, and other considerations are secondary. *Eaton v. Dixon,* 69 Ark. App. 9, 9 S.W.3d 535 (2000). It seems clear from the chancellor's detailed letter opinion that he considered each party's past and present circumstances in determining what would be in Chelsea's best interest. Because the chancellor appears to have taken into account all of the points made by appellant, we cannot say that he clearly erred in concluding that custody should be awarded to appellee.

Appellant also argues that appellee had not assumed his financial obligations toward Chelsea until paternity was proven even though she and appellee were living together at the time the child was conceived. This fact was likewise duly noted in the chancellor's letter opinion. Appellee's eventual acceptance of his financial responsibility toward the child could have contributed to the chancellor's conclusion that he had matured.

■ As the dissent accurately notes, the chancellor did not make specific findings regarding the statutory requirements.

Appellant could have asked for such findings under Ark. R. Civ. P. 52. Her failure to do so constitutes a waiver of the issue. *Smith v. Quality Ford, Inc.*, 324 Ark. 272, 920 S.W.2d 497 (1996).

The dissent also suggests that we have ignored *Norwood v. Robinson*, 315 Ark. 255, 866 S.W.2d 398 (1993). To a certain extent this is true, because the *Norwood* issue was not raised in the trial court, nor by the appellant in her briefs in this appeal. Even so, we have no reason to conclude that the trial court was either unaware of, or refused to follow, the court's decision in *Norwood*.

BIRD, GRIFFEN, BAKER, ROBBINS, CRABTREE, and ROAF, JJ., agree.

NEAL, J., concurs.

HART, J., dissents.

OLLY NEAL, Judge, concurring. I concur that the chancellor did not commit reversible error in finding that it was in the best interest of the child to award custody to appellee. However, I write separately to express my concerns about appellee's ability to come before the court, absent him assuming financial responsibility for the child, with the same status as appellant in a petition for custody.

The United States Supreme Court has held that it is a violation of the equal protection clause when a state denies an illegitimate child the same rights as those afforded a legitimate child. *See Gomez v. Perez*, 409 U. S. 535 (1973); *see also* R.H. Helmholz, *Support Orders, Church Courts, and the Rules of Filius Nullius: A Reassessment of the Common Law*, 63 VA. L. REV. 431, 431 (1977). Our law indicates that the obligation to support an illegitimate child arises only upon a finding of paternity. *See Paul M. v. Teresa M.*, 36 Ark. App. 116, 818 S.W.2d 594 (1991) (once paternity is established, the law with regard to child support in a divorce case is applicable). However, when children are born into a marriage and the parents later separate or divorce, our law states that a parent has a legal obligation to support a minor child regardless of the existence of a support order. *See Ford v. Ford*, 347 Ark. 485, 65 S.W.3d 432 (2002); *see also Fonken v. Fonken*, 334 Ark. 637, 976

S.W.2d 952 (1998). This duty to support a child in the absence of a support order is both legal and moral. *See Fonken, supra.*

In custody cases arising out of a divorce, the parents share the same status; each is viewed as having equally shared in the care and support of their children. Arkansas Code Annotated section 9-10-113(b) and (c) provides that a biological father who has established paternity may petition the proper court for custody of his child and that the court may award him custody upon a finding that (1) he is a fit parent to raise the child; (2) he has assumed his responsibilities toward the child by providing care, supervision, protection, and financial support for the child; and (3) it is in the best interest of the child to award custody to the biological father. I interpret this section to mean that in order for the biological father to have the same status as the mother in a petition for custody, he must have provided some form of support prior to his petition. The chancellor found that appellee began paying support after the paternity determination and that he failed to support the child when she was not living with him. I believe that appellee does not share appellant's same status in seeking custody because he failed to support the child prior to the establishment of paternity.

If equal protection truly requires that we treat illegitimate and legitimate children the same, the statute should read so as to require a showing by the biological father that, prior to his petition for custody, he has assumed his responsibilities toward the child by providing care and financial support.

I also note that this case is distinguishable from *Norwood v. Robinson,* 315 Ark. 255, 866 S.W.2d 398 (1993). In *Norwood,* a father petitioned for custody of his child after a paternity order was issued against him; thus, our supreme court held that, in order to obtain custody, he was required to show a material change in circumstances. *See id.* Here, appellant first filed a complaint to establish paternity. Appellee asserted that he was not the father of appellant's child and a paternity test was ordered. When the paternity test indicated that appellee was indeed the father, he acknowledged paternity and filed a counterclaim for custody. Hence, *Norwood* is not applicable because appellee's petition was filed prior to the issuance of a paternity order.

JOSEPHINE LINKER HART, Judge, dissenting. Arkansas Code Annotated Section 9-10-113 (Repl. 2002) provides as follows:

> (a) When a child is born to an unmarried woman, legal custody of that child shall be in the woman giving birth to the child until the child reaches the age of eighteen (18) years unless a court of competent jurisdiction enters an order placing the child in the custody of another party.

> (b) A biological father, provided he has established paternity in a court of competent jurisdiction, may petition the chancery court, or other court of competent jurisdiction, wherein the child resides, for custody of the child.

> (c) The court may award custody to the biological father upon a showing that:

> (1) He is a fit parent to raise the child;

> (2) He has assumed his responsibilities toward the child by providing care, supervision, protection, and financial support for the child; and

> (3) It is in the best interest of the child to award custody to the biological father.

The clear wording of this statute places the custody of a child born to an unmarried woman in the mother of the child. Further, the statute unequivocally states that before the court may remove custody from the mother and place custody in the child's biological father, the father must fulfill the conditions set forth in the statute.

I note that the chancellor failed to make sufficient findings regarding the statutory requirements for an award of custody to appellee. However, the chancellor did make one finding that was pertinent to the statutory requirement. He found that appellee failed to pay support for the child until after the blood test confirmed paternity and failed to pay support when the child was not living with him. In my view, this is a finding that appellee failed to assume his responsibility toward the child by providing care, supervision, protection, and financial support as required by the statute.

Not only did the court and the majority fail to address the mandated statutory requirements, but also they failed to follow the precedent set out in *Norwood v. Robinson*, 315 Ark. 255, 866 S.W.2d 389 (1993). In *Norwood*, custody is presumed to be in the mother unless the biological father establishes a material change in circumstances and satisfies the statutory criteria for a change in custody. What we have done is take a child away from its mother despite a finding by the court that appellee failed to perform the parental duty of support as mandated by the statute and failed to show a change of circumstances as required by *Norwood*. Based on the finding that appellee failed to support the child and the lack of other findings by the chancellor, I must conclude that the chancellor's decision to award custody to appellee was clearly erroneous.