Terry KEY, Individually and In Her Capacity as Next Friend, Guardian, and Parent of Taylor Key, *a Minor v.* Steve CORYELL *et al.*

CA 03-1188 185 S.W.3d 98

Court of Appeals of Arkansas
Division II
Opinion delivered June 2, 2004

*Taylor, Halliburton & Ledbetter*, Memphis, by: *P. Mark Ledbetter*, for appellant.

*Williams & Anderson PLC*, Little Rock, by: *Kelly S. Terry*; and *Barrett & Deacon P.A.*, Jonesboro, by: *Ralph W. Waddell*, for appellees.

LARRY D. VAUGHT, Judge. Terri Key, the mother of Taylor Key, appeals from the dismissal of her complaint against a Catholic school in West Memphis that Taylor attended for over two years, its current and former teachers and administrators, and the Bishop of the Catholic Diocese of Little Rock. She argues on appeal that she stated claims for breach of contract, outrage, breach of fiduciary duty, negligence, and gross negligence. We affirm the circuit court's decision in all respects.

In her complaint, appellant alleged that Taylor, who was born in 1992, had been diagnosed as having Tourette's syndrome, "OCD," and "ADHD."[1] Appellant was not pleased with Taylor's experience in the Marion public schools, and she enrolled him in the second grade at St. Michael's Catholic School for the school

---

[1] Appellant identifies these acronyms in her statement of the case as "obsessive compulsive disorder" and "attention deficit hyperactivity disorder."

year 1999-2000. Taylor remained at St. Michael's until just before Christmas of the fourth grade, when the school forced appellant to withdraw him because of his persistent behavior problems and because appellant purportedly caused trouble with other parents who, like appellant, felt that their children were not being treated well by the school.

On December 16, 2002, appellant filed this action in the Crittenden County Circuit Court, individually and on Taylor's behalf, against appellees St. Michael's; its principal, Steve Coryell; its former principal, Sister Georgia Felderhoff; his second-grade teacher, Lisa Hood; his third-grade teacher, Sister Christopher Flowers; Mary Jo Dagastino; Sara Wilbanks; and the Bishop of the Catholic Diocese of Little Rock. The gist of her complaint was that Taylor's special educational needs were not met at St. Michael's. She asserted causes of action for breach of contract, intentional infliction of emotional distress (outrage), breach of fiduciary duty, negligence, and gross negligence. On January 8, 2003, appellees filed a motion to dismiss for failure to state facts on which relief may be granted under Ark. R. Civ. P. 12(b)(6). Appellant filed a response to this motion and a brief, to which she attached a copy of the school handbook. She also filed a motion for leave to amend the complaint on February 10, 2003, and attached a proposed amended complaint to her motion. The amended complaint was not signed or filed. The court took no action on her motion for leave to amend.

On August 18, 2003, the circuit court granted appellees' motion to dismiss on all counts. The court stated that appellant did not allege facts arising out of a contractual obligation for which appellees would be obligated to appellant or her son; that appellant failed to state incidences of specific conduct so outrageous in nature as to go beyond all possible bounds of decency and to be regarded as intolerable in a civil society; that appellant failed to establish the existence of a fiduciary duty; that she failed to establish a standard of care owed or breached by appellees; and that she failed to state facts demonstrating any intentional failure on the part of any appellee to perform a manifest duty in reckless disregard of the consequences. From that dismissal, appellant pursues this appeal.

In reviewing the circuit court's decision on a motion to dismiss under Ark. R. Civ. P. 12(b)(6), we treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint. *Travelers Cas. & Sur. Co. of*

*Am. v. Arkansas State Highway Comm'n*, 353 Ark. 721, 120 S.W.3d 50 (2003). In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint and the pleadings are to be liberally construed. *Id.* However, Arkansas law requires fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. *Id.*; *Rippee v. Walters*, 73 Ark. App. 111, 40 S.W.3d 823 (2001). According to Ark. R. Civ. P. 8(a)(1), a pleading that sets forth a claim for relief shall contain a statement in ordinary and concise language of facts showing that the pleader is entitled to relief. Rule 12(b)(6) provides for the dismissal of a complaint for failure to state facts upon which relief can be granted. These two rules must be read together in testing the sufficiency of a complaint. *Hames v. Cravens*, 332 Ark. 437, 966 S.W.2d 244 (1998). We look to the underlying facts supporting an alleged cause of action to determine whether the matter has been sufficiently pled. *Country Corner Food & Drug, Inc. v. First State Bank & Trust Co.*, 332 Ark. 645, 966 S.W.2d 894 (1998).

■ ■ Appellant argues throughout her brief that the circuit court should have made findings of fact. We disagree. As stated above, when a motion to dismiss has been made, the circuit court resolves all inferences in favor of the complaint and does not engage in determining questions of fact. Further, Ark. R. Civ. P. 52(a) provides that findings of fact are unnecessary on decisions of motions brought under the rules of civil procedure. In any event, appellant did not make this argument to the circuit court, and we need not consider an argument made for the first time on appeal. *Ghegan & Ghegan, Inc. v. Barclay*, 345 Ark. 514, 49 S.W.3d 652 (2001). When a party fails to ask the court to make findings of fact, that issue is waived. *See Hickman v. Culberson*, 78 Ark. App. 96, 78 S.W.3d 738 (2002).

■ Appellant also argues throughout her brief that the circuit court should have granted her motion for leave to amend the complaint. Appellant, however, failed to obtain a ruling on her motion. Her failure to do so is a procedural bar to our consideration of that issue on appeal. *Travelers Cas. & Sur. Co. of Am. v. Arkansas State Highway Comm'n, supra*; *Doe v. Baum*, 348 Ark. 259, 72 S.W.3d 476 (2002); *Brown v. Fountain Hill Sch. Dist.*, 67 Ark. App. 358, 1 S.W.3d 27 (1999).

█ Appellant additionally argues that the circuit court should have considered her amended complaint and found it sufficient to state claims for relief under Rule 12(b)(6). Although Arkansas Rule of Civil Procedure 15(a) provides that a party may amend her pleadings at any time without leave of the court, appellant did not file her amended complaint. She had from January 8, 2003, when appellees' motion to dismiss was filed, until August 18, 2003, when the order of dismissal was entered, to file the amended complaint but did not do so. Obviously, the unsigned and unfiled copy of the amended complaint that appellant attached to her motion for leave to amend was ineffective. *See* David Newbern & John Watkins, *Arkansas Civil Practice & Procedure* § 8-16 (3d ed. 2002). Therefore, the circuit court need not have considered it.

Appellant argues that the trial court erred in concluding that she did not establish claims for (1) breach of contract, (2) outrage, (3) breach of fiduciary duty, (4) negligence, and (5) gross negligence.

### Breach of Contract

██ ██ The elements of a contract are: (1) competent parties; (2) subject matter; (3) legal consideration; (4) mutual agreement; (5) mutual obligation. *Cash In A Flash Check Advance of Ark., LLC v. Spencer*, 348 Ark. 459, 74 S.W.3d 600 (2002). Arkansas law recognizes that, to have a valid contract, all terms should be definitely agreed upon, *Ciba-Geigy Corp. v. Alter*, 309 Ark. 426, 834 S.W.2d 136 (1992), and the terms must be "reasonably certain." *ERC Mtg. Group, Inc. v. Luper*, 32 Ark. App. 19, 795 S.W.2d 362 (1990). Terms are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy. *Id.*

In *Ross v. Creighton University*, 957 F.2d 410 (7th Cir. 1992), the court recognized that, in Illinois, the relationship between a student and an educational institution is, in some of its aspects, contractual. The court cautioned, however, that to state a claim for breach of contract, the plaintiff must do more than simply allege that the education was not good enough. Instead, he must point to an identifiable contractual promise that the defendant failed to honor; the essence of the complaint would not be that the institution failed to perform adequately a promised educational service but that it failed to perform that service at all. In *Ross, supra,*

the court held that the plaintiff, who set forth specific promises that the defendant failed to honor, stated a breach-of-contract claim.

■ Appellant's original complaint alleged the following facts about the school's agreement with appellant: (1) Sister Georgia assured appellant that her son's educational and special needs would be met and that he would be in a loving, supportive environment; (2) Steve Coryell told appellant during the summer before Taylor entered fourth grade that he would work with her to improve matters and that he talked her into re-enrolling Taylor; (3) Mr. Coryell told appellant that Taylor's fourth-grade teacher had twenty-seven years' experience in the Memphis schools and "could handle things." Here, because the terms of the purported contract set forth in the complaint were so indefinite, we have no choice but to hold that there was no contract between the parties of sufficiently definite terms by which a remedy could be fashioned in the event of a breach. Accordingly, the circuit court correctly concluded that appellant failed to state a claim for breach of contract.

Even if we were to consider the unfiled amended complaint, the result would be the same. In addition to the above allegations, appellant stated:

> A valid contract was signed by all parties and all parties were competent. In said contract, [appellant] agreed to pay tuition as required by the contract, starting with a $200.00 deposit, and that, in return, the school would provide an education at the appropriate grade level for her son, Taylor Key, and provide the services needed to meet the special needs of her son. In addition, this contract was bolstered by a student handbook that was distributed to all parents and required the signatory acceptance of same. This said handbook sets out the educational philosophy and in part reads: "... to strive to provide a Christian atmosphere and to promote the maximum spiritual, intellectual, emotional, social and physical growth of each student. As a Catholic school, St. Michael's exists to free students from fear and ignorance enabling them to love God, themselves, and other [sic] eagerly and openly. The school recognizes the rights of individuals as children of God deserving honor and respect ..." This same handbook sets out goals and objectives for the educational process. These include: "(1) To provide St Michael Catholic School students a well-rounded academic program with Catholic fundamentals as its core; (2) To provide quality education ...; (3) To instill a positive attitude towards the learning process while provid-

ing students with the opportunity to achieve academic success; (4) To promote Christian values and moral behavior; (5) To promote unity, love, respect, and understanding among all people regardless of race, religion, or socio-economic group; (6) To foster positive self-esteem and mature responsible behavior ...; (7) To encourage teachers to strengthen their commitment and professional growth." Attached to each of these student handbooks was a sheet entitled "Parent-Student Statement of Responsibility." This document was signed and returned to school as an acknowledgment and a further binding of the contractual relationship between the student, the parent and the school.

 Arkansas courts have never held that a contract between a student and a school or an educator is created by a student handbook. Even in the context of employment cases, a handbook can create an enforceable contract only in limited circumstances. *See Crain Indus., Inc. v. Cass*, 305 Ark. 566, 810 S.W.2d 910 (1991). Other state courts have held that the materials provided to a student, including enrollment agreements and catalogs, may become part of an agreement between a student and an educational institution. *See Christensen v. Southern Normal Sch.*, 790 So. 2d 252 (Ala. 2001); *Cencor, Inc. v. Tolman*, 868 P.2d 396 (Colo. 1994). Here, however, the handbook was not appended to the complaint and thus was not considered by the court. In any event, even if the handbook was a part of the "agreement" that appellant had with appellees, its terms were so vague and general that they are not enforceable.

### Outrage

 The four elements that are essential to establish liability for the tort of outrage are: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Crockett v. Essex*, 341 Ark. 558, 19 S.W.3d 585 (2000). Arkansas appellate courts give a narrow view to the tort of outrage and require clear-cut proof to establish the elements in outrage cases. *Id.*; *Brown v. Fountain Hill Sch. Dist.*, *supra* (rejecting an injured student's outrage claim against school district, its officials, and the employee

who removed a table saw's blade safety guard). This cause of action was not intended to provide a remedy for every slight insult or indignity one must endure. *Miller v. Kroger Co.*, 82 Ark. App. 281, 105 S.W.3d 789 (2003).

Without citation to authority, appellant argues that the standard should be what a fourth-grade child with neurological problems would have perceived. Although the standard is tied to what a reasonable person could endure, Taylor's problems would be relevant as to whether he was more vulnerable, and thus more susceptible, to outrageous conduct. *See Crockett v. Essex, supra.* Appellant also contends that we should consider the "totality of the circumstances." In *Thornton v. Squyres*, 317 Ark. 374, 877 S.W.2d 921 (1994), the appellant argued that, viewed within the totality of the circumstances, the appellee's conduct could be regarded as outrageous. Although the supreme court disagreed with her view of the facts, it did not disapprove of her "totality of the circumstances" argument in the context of an outrage case.

According to appellant, the following actions taken by appellees are sufficient to state a claim for the tort of outrage: (1) Taylor's second-grade teacher informed appellant that she was a teacher, not a babysitter, and referred to Taylor as the "class clown"; (2) his third-grade teacher told him that he was bad and that his behavior was unacceptable; (3) his third-grade teacher yelled at Taylor and told him to shut up and that he was driving her crazy; (4) the sisters prayed for Taylor to get "better control"; (5) Taylor's fourth-grade teacher yelled at him and knocked his books off his desk; (6) Taylor did not receive an award; (7) Taylor missed the Christmas party after he was involuntarily withdrawn from the school; (8) Taylor's fourth-grade picture was not in the yearbook.

Even if all of these allegations are true, whether considered separately or together, they do not satisfy the legal elements of a claim for the tort of outrage. Although Taylor may have experienced guilt, reduced self-esteem, frustration, and disappointment, we cannot say that, as a matter of law, appellees' conduct was so outrageous in character or so extreme in degree as to go beyond all possible bounds of decency and to be regarded as utterly intolerable in a civilized society. For these reasons, we affirm the dismissal of appellant's outrage claim.

### Fiduciary Duty

Appellant further argues, without citation to any supporting authority, that the relationship of a student with special

needs and an educator who represents that he or a school can meet those needs and provide an education appropriate for the student's age and grade level is of a fiduciary nature. We are aware of no case in Arkansas that supports appellant's argument. A person standing in a fiduciary relationship with another is subject to liability to the other for harm resulting from a breach of the duty imposed by the relationship. *Long v. Lampton*, 324 Ark. 511, 922 S.W.2d 692 (1996). Breach of fiduciary duty involves betrayal of a trust and benefit by the dominant party at the expense of one under his influence. *Cole v. Laws*, 349 Ark. 177, 76 S.W.3d 878 (2002), *cert. denied*, 537 U.S. 1003 (2002). It is vital, however, that the existence of a fiduciary duty be established. The issue of what duty is owed, if any, is always a question of law. *Long v. Lampton, supra.* In *Cherepski v. Walker*, 323 Ark. 43, 913 S.W.2d 761 (1996), the supreme court held that a defendant priest did not owe a fiduciary duty to a parishioner. We cannot say that appellees owed appellant and Taylor any greater duty than a priest owes a parishioner. *See also Hendricks v. Clemson Univ.*, 353 S.C. 449, 578 S.E.2d 711 (2003); *Shapiro v. Butterfield*, 921 S.W.2d 649 (Mo. Ct. App. 1996).

We affirm the dismissal of appellant's claim for breach of fiduciary duty.

### Educational Malpractice

Appellant also argues that this is a case of "professional negligence." She points to no Arkansas cases, however, that have applied that theory in the context of a student/educator relationship. To establish a prima facie case in tort, a plaintiff must show that damages were sustained, that the defendant was negligent, and that such negligence was a proximate cause of the damages. *J.E. Merit Constructors, Inc. v. Cooper*, 345 Ark. 136, 44 S.W.3d 336 (2001). In order to prove negligence, there must be a failure to exercise proper care in the performance of a legal duty that the defendant owed the plaintiff under the circumstances surrounding them. *Shannon v. Wilson*, 329 Ark. 143, 947 S.W.2d 349 (1997). Duty is a concept that arises out of the recognition that relations between individuals may impose upon one a legal obligation for the other. *Id.* The question of what duty, if any, is owed by one person to another is always a question of law. *Heigle v. Miller*, 332 Ark. 315, 965 S.W.2d 116 (1998).

Most out-of-state cases that have addressed this issue reject the existence of an "educational malpractice" cause of

action. *See Hendricks v. Clemson Univ., supra; Christensen v. Southern Normal Sch., supra; Page v. Klein Tools, Inc.,* 461 Mich. 703, 610 N.W.2d 900 (2000); *Blane v. Alabama Commercial College, Inc.,* 585 So. 2d 866 (Ala. 1991); *D. S. W. v. Fairbanks N. Star Borough Sch. Dist.,* 628 P.2d 554 (Alaska 1981); *Miller v. Loyola Univ. of New Orleans,* 829 So. 2d 1057 (La. Ct. App. 2002); *Vogel v. Maimonides Acad. of W. Conn., Inc.,* 58 Conn. App. 624, 754 A.2d 824 (2000); *Tubell v. Dade County Pub. Schs.,* 419 So. 2d 388 (Fla. Dist. Ct. App. 1982). The cases dealing with this issue generally hold that a cause of action seeking damages for acts of negligence in the educational process is precluded by considerations of public policy, among them being the absence of a workable rule of care against which the defendant's conduct may be measured, the inherent uncertainty in determining the cause and nature of any damages, and the extreme burden that would be imposed on the resources of the school system and the judiciary. *See Hunter v. Board of Educ. of Montgomery County,* 292 Md. 481, 439 A.2d 582 (1982); *Rich v. Kentucky Country Day, Inc.,* 793 S.W.2d 832 (Ky. Ct. App. 1990). On the other hand, the Supreme Court of Iowa recognized such a cause of action in limited situations in *Sain v. Cedar Rapids Community School District,* 626 N.W.2d 115 (Iowa 2001).

■ We find the majority view more persuasive and choose not to recognize a cause of action for educational malpractice in Arkansas. Therefore, we affirm the circuit court on this issue.

### Gross Negligence

■ We also hold that appellant did not state a cause of action for gross negligence, which is the intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another. *Doe v. Baum, supra.* As with negligence, there must be a duty imposed by law for this claim to survive a motion to dismiss. Because appellant failed to establish such a duty, the court's dismissal of this claim is affirmed.

Affirmed.

BIRD and CRABTREE, JJ., agree.