Richard and Mary ROBERTS *v.*
GREEN BAY PACKAGING, INC.,
and William Rhodes

CA 07-60                                    272 S.W.3d 125

Court of Appeals of Arkansas
Opinion delivered January 23, 2008

*Kelly Law Firm, PLC,* by: *A.J. Kelly,* for appellants.

*Brazil, Adlong & Winningham, PLC,* by: *William C. Brazil,* for appellee William Rhodes.

*Howard C. Yates,* for appellee Green Bay Packaging, Inc.

D.P. MARSHALL JR., Judge. The parties own adjoining tracts of land in rural Van Buren County. Global Road crosses the Robertses' property, and Mr. Rhodes's and Green Bay's use of the road has caused friction. The Robertses filed this suit alleging that Mr. Rhodes, Green Bay, and a John Doe had destroyed trees while widening the road. The circuit court concluded that the parties settled the litigation and entered an "Agreed Decree," which dismissed all claims and counterclaims against all the parties. The Robertses appeal. They argue that no final settlement agreement was ever reached or, in the alternative, that the decree contains terms to which they never agreed. We reverse and remand because we are firmly convinced that the parties never reached a mutual agreement on the settlement terms. Ark. R. Civ. P. 52; *Country Corner Food & Drug, Inc. v. Reiss,* 22 Ark. App. 222, 227, 737 S.W.2d 672, 674 (1987) (standard of review).

About a week before a scheduled trial, the Robertses' attorney sent all counsel a two-page letter dated 1 July 2005 proposing settlement terms. The proposal offered Green Bay and Mr. Rhodes a thirty-foot easement to be delineated in a survey, gave the Robertses full access to Global Road plus an easement across Green Bay's land in a connecting road to State Highway 16, and prohibited interference with the Robertses' petition to remove Global Road from the county-road system. The proposal also called for gates on the road and for Mrs. Rhodes, who was not a party to the suit, to agree to the settlement in writing. The circuit court then removed the case from the trial docket. The record contains no contemporaneous explanation of why. When the parties later fell out about whether a settlement had been reached, the lawyers for Mr. Rhodes and Green Bay said that the case was not tried because the parties had settled, while the lawyer for the Robertses said that the parties had agreed to agree but not come to final terms. After the trial date came and went, a survey was done and the lawyers exchanged letters about Green Bay's desire for an easement wider than thirty feet at several points along the road.

A few months later, Mr. Rhodes expressed frustration with the delay, accused the Robertses of backing out of the settlement, and moved to enforce it. The motion did not specify the parties' terms, but stated that they had reached a settlement shortly before the trial date. Green Bay joined the motion to enforce. The Robertses opposed the motion, stating that some but not all issues had been resolved before trial and no final settlement had yet been reached. The Robertses then submitted a proposed decree to all counsel that tracked (with some variation) the July 1st letter. Mr. Rhodes's counsel rejected it outright as "not even close to what we agreed to." Green Bay's counsel later drafted a decree that differed in many respects from the July 1st letter. This decree created mutual easements in two "offshoots" from Global Road, gave the Robertses a "right of use" rather than an easement along Green Bay's road, attempted to describe two places on Global Road where the easement would be wider than thirty feet, and contained no signature line for Mrs. Rhodes.

In due course, the circuit court held a hearing on the motion to enforce. No one testified. All the lawyers, as officers of the court, explained what had happened. Counsel for Green Bay and Mr. Rhodes said there was a settlement. Counsel for the Robertses said that they tried to reach a final settlement but could not do so. Over two objections from the Robertses, the court received into evidence the July 1st letter proposal, the parties' correspondence, and the proposed decrees. The Robertses did not object to the lack of a sponsoring witness for these documents or challenge their authenticity. Instead, they argued (1) that their admission offended Rule 408's bar against evidence of settlement negotiations, and (2) that the other parties — despite outstanding discovery and a motion to compel disclosure of what exhibits they planned to offer at the hearing — had refused to disclose this proposed evidence.

■■ We reject the Robertses' contentions that the court abused its discretion by considering the documents about settlement. *Gailey v. Allstate Ins. Co.*, 362 Ark. 568, 575, 210 S.W.3d 40, 45 (2005) (standard of review). Arkansas Rule of Evidence 408 prohibits using offers of compromise to prove liability or the invalidity or amount of a claim. *McKenzie v. Tom Gibson Ford, Inc.*, 295 Ark. 326, 332-33, 749 S.W.2d 653, 657 (1988). The Rule, however, allows evidence of settlement negotiations to prove other things. *Ciba-Geigy Corp. v. Alter*, 309 Ark. 426, 437, 834 S.W.2d 136, 141 (1992). Mr. Rhodes and Green Bay did not offer the documents on issues related to liability. The issue at the

hearing was whether the parties had agreed to settle, and all these documents were competent proof on that issue. We do not condone Mr. Rhodes's and Green Bay's failure to tell the Robertses about their planned exhibits before the hearing, but we see no reversible error on this point. Like the circuit court we discern no prejudice from this omission. The Robertses were part of this back and forth about all settlement details, and the other parties' likely exhibits about those negotiations could not have been a surprise.

■ On the merits, we conclude that the circuit court clearly erred because it made a contract for these parties when they had tried but failed to make one. Our law favors and encourages settlement agreements. *Williams v. Davis*, 9 Ark. App. 323, 325, 659 S.W.2d 514, 515 (1983). But, like any other contract, the terms of a settlement agreement must be definitely agreed upon and reasonably certain. *Key v. Coryell*, 86 Ark. App. 334, 341, 185 S.W.3d 98, 103 (2004). A mutual agreement, as evidenced by objective indicators, is essential. *See generally Ward v. Williams*, 354 Ark. 168, 180, 118 S.W.3d 513, 520 (2003). This element is missing here.

The record contains no writings, testimony, or agreements in open court showing that the parties mutually assented to all material settlement terms in the "Agreed Decree." Green Bay's and Mr. Rhodes's counsel stated at the hearing that they accepted the July 1st proposal from the Robertses' counsel. Lawyers' statements that a settlement exists, however, are insufficient in the face of denials by opposing counsel and a lack of testimonial or other competent evidence. *Williams*, 9 Ark. App. at 325-26, 659 S.W.2d at 515-16. While Green Bay and Mr. Rhodes contend that they accepted the July 1st letter, which was in evidence, Mr. Rhodes rejected unequivocally the proposed decree based on that letter. Moreover, even if the July 1st proposal was accepted, the circuit court's "Agreed Decree" did not comport with the letter's terms. Instead, the "Agreed Decree" tracked the proposed decree drafted by Green Bay's lawyer, adding some provisions to the Robertses' proposal and eliminating others.

We are left with the firm conviction that the circuit court clearly erred by entering the decree. *Country Corner*, 22 Ark. App. at 227, 737 S.W.2d at 674. We therefore reverse and remand for trial.

ROBBINS and GRIFFEN, JJ., agree.