Joe Buck E. EVANS *v.* HARRY ROBINSON PONTIAC-
BUICK, INC., Autobond Acceptance Co.,
Auto Bond Receivables Trust 1966-C, and
First Fidelity Acceptance Corp.

98-191 983 S.W.2d 946

Supreme Court of Arkansas
Opinion delivered January 28, 1999

*Thurman Ragar, Jr.*, for appellant.

*Warner, Smith & Harris, PLC*, by: *Joel D. Johnson*, for appellee Harry Robinson Pontiac-Buick, Inc.

*Friday, Eldredge & Clark*, by: *William A. Waddell, Jr.*, for appellee Autobond Acceptance Corp.

TOM GLAZE, Justice. This litigation is a usury case involving a choice-of-law provision in a retail installment contract. The case is before this court upon the grant of summary judgment to three of the defendants, Autobond Acceptance Company, Auto Bond Receivables Trust 1966-C (hereinafter to be collectively referred to as "Autobond"), and First Fidelity Acceptance Corporation (First Fidelity), and the grant of dismissal to the remaining defendant, Harry Robinson Pontiac-Buick, Incorporated (Harry Robinson). The plaintiff, Joe Buck E. Evans, appeals from the order of Sebastian County Chancery Court extending the defendants such relief. Evans presents three arguments for the court's review. Because we do not find Evans's arguments to be persuasive, the chancellor's order is affirmed.

The undisputed facts show that Evans approached Harry Robinson about purchasing an automobile. In order to obtain financing, Evans completed and signed a credit application for First Fidelity at the offices of Harry Robinson. First Fidelity is a Nevada corporation with its business office in Texas. First Fidelity evaluated Evans's information at its Texas office and informed Harry Robinson that it had conditionally approved Evans's application. On June 6, 1996, Evans entered into a retail installment contract with Harry Robinson for the purchase of a 1994 Buick

Skylark. The contract provided for interest at an annual rate of 18%, an amount that exceeded the legal amount in Arkansas. Contemporaneous with the contract, Evans also completed and signed an employment verification authorization for First Fidelity. First Fidelity received this document at its Texas office and then made its final decision to extend credit to Evans for the financing of the Buick Skylark.

On the face of the retail installment contract, language in bold print indicates that the contract was assigned. Specifically, the contract provided that the agreement was assigned to First Fidelity and reflects First Fidelity's address and telephone number. The language further described that the terms of the assignment were made under separate agreement. The assignment provision was signed by Harry Robinson on the same day Evans signed the contract. On the reverse side, in a boxed-off space, the contract reads as follows:

> To contact the holder of your Contract about this account call the number appearing with the Assignee's name in the ASSIGN-MENT section.

Additionally, under the "GENERAL TERMS" section, it is agreed that the contract "will be governed by the law of the State of Texas."

After entering the agreement, Evans began to make payments on the Buick Skylark to First Fidelity by mailing the payments to First Fidelity's Texas office, which First Fidelity required. Some months later, Evans stopped making payments and fell into default. He then filed suit in Sebastian County Chancery Court on June 17, 1997, naming Harry Robinson and Autobond, to whom the contract had been assigned when Evans went into default, as separate defendants. Eight days later, the vehicle was repossessed from Evans's place of employment. Evans's complaint alleged that the retail installment contract was usurious under Arkansas Constitution, Article 19, section 13, and that, because Harry Robinson and Evans were Arkansas residents, and the contract was a wholly Arkansas contract, Harry Robinson and Evans could not choose for Texas law to govern their agreement. Evans later amended his complaint to add First Fidelity as a party defend-

ant. The second amended complaint claimed that the subsequent assignment to First Fidelity by Harry Robinson was merely a scheme to cloak its usurious nature. Evans amended his complaint a final time on September 3, 1997, whereby Evans added that Harry Robinson had violated certain federal Truth-in-Lending laws. The prayers for relief of the various complaints asked that the chancellor find the contract void for usury and allow Evans a double recovery for the interest paid on the contract. Evans also demanded the return of his vehicle free of any liens. Finally, Evans requested that First Fidelity be enjoined from putting any provision in its contracts in violation of Arkansas usury law.

Cross-motions for summary judgment were filed by Autobond and First Fidelity, as well as Evans. On September 10, 1997, Harry Robinson answered Evans's third amended complaint and also moved to dismiss the case based on the statute of limitations for Truth-in-Lending claims. Harry Robinson similarly alleged that the complaint failed to state facts upon which relief could be granted.

The chancellor held two hearings, the first on July 9, 1997. At this hearing, Evans was the primary witness. During his testimony, Evans admitted that he had the opportunity and did in fact read the retail installment contract prior to signing the document. Evans further admitted that he knew First Fidelity was providing the financing for the automobile, and that an agent of First Fidelity had to be present when Evans signed the contract. Evans also testified to the fact that all payments were mailed by him outside Arkansas to First Fidelity's Texas office. Also during the hearing, Autobond challenged the chancellor's jurisdiction, arguing that Evans's case was one that should be heard in circuit court. After considering counsel's arguments on various issues, the chancellor ordered the car to be kept with the repossessor and continued the hearing for another day, taking the jurisdictional question under advisement.

The second hearing took place on November 19, 1997. Harry Robinson asserted its statute-of-limitations argument pertaining to the Truth-in-Lending allegation. After reviewing the relevant dates, Evans's counsel agreed that Harry Robinson "may

have a point on the one-year statute of limitations matter." At the conclusion of the hearing, the chancellor orally announced that summary judgment would be granted. On December 12, 1997, the chancellor entered his formal order granting Autobond and First Fidelity summary judgment, and dismissing Harry Robinson based on the applicable statute of limitations.

As an initial matter, Evans submits that jurisdiction is proper in chancery court. This point is not contested on appeal by either Autobond, First Fidelity, or Harry Robinson. In its brief, Autobond concedes that it failed to get a precise ruling below on its argument to transfer the case to circuit court. Autobond submits that because there is no ruling on this issue by the chancellor, the issue is not ripe for decision in this court. Harry Robinson has adopted Autobond's position. We conclude that equity was not without jurisdiction in this matter. In his various complaints, Evans alleged certain causes of action and requested certain relief which sounded in equity. The adequacy of a legal remedy does not render the chancery court wholly without jurisdiction, and the issue of the legal remedy must first be presented to the chancery court. *Townsend v. Arkansas State Highway Comm'n*, 326 Ark. 731, 933 S.W.2d 389 (1996). While portions of Evans's complaint requested a legal remedy, other portions asked for relief properly recognized in equity. Here, as in *Townsend*, the issue was argued to the chancery court, but for the reasons just expressed, we hold jurisdiction was properly in the chancery court.

Evans's next two arguments pertain to the grant of summary judgment to First Fidelity and Autobond. Recently, in another usury case, this court set out its standard of review of grants of summary judgment. *Nelson v. River Valley Bank & Trust*, 334 Ark. 172, 971 S.W.2d 777 (1998). In *Nelson*, this court wrote that summary judgment is appropriate when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. In making this determination, we view the evidence in the light most favorable to . . . the part[y] resisting the motion, and resolve all doubts and inferences in their favor. *Id.* Evans submits summary judgment is inappropriate because a fact issue exists as to whether an assignment of a

contract containing a choice-of-law provision that made the contract usurious on its face was simply a scheme to circumvent Arkansas usury law. Evans, after acknowledging that the test for a choice-of-law provision is the degree of relation of the chosen state to the transaction, argues that Texas had nothing to do with him or Harry Robinson, and that the "real deal" centered not on choice-of-law, but on the fact that it was a wholly Arkansas transaction.

 Usury occurs when a lender charges more than the legally permissible maximum rate of interest, defined by Article 19, section 13 of the Arkansas Constitution, as amended by Amendment 60. *Smith v. MRCC Partnership*, 302 Ark. 547, 792 S.W.2d 301 (1990). For an agreement to be usurious, it must be so at the time it was entered into. *Id.* The party asserting usury has the burden of proof, and the proof must be sustained by clear and convincing evidence. *Id.* The intention to charge a usurious rate of interest will never be presumed, imputed, or inferred where the opposite result can be fairly and reasonably reached. *Id.*

Here, there is no disagreement that, under Arkansas law, the retail installment contract is usurious, because it expressly states that an interest rate of 18% per annum was to be charged. This is in violation of Article 19, section 13(b), which applies to consumer loans and credit sales, and dictates that interest rates on such loans shall not be above 17%. Therefore, the retail installment contract would be usurious, but for the assignment to a Texas entity and the provision in the contract stating that Texas law shall apply.

Arkansas Code Annotated § 4-1-105(1) (Supp. 1997), a provision of the Uniform Commercial Code, allows parties to choose a foreign state's law to govern a transaction:

> Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement, this subtitle applies to transactions bearing an appropriate relation to this state.

This statute, formerly Ark. Stat. Ann. § 85-1-105(1), was cited to with approval in *Arkansas Appliance Distributing Co. v. Tandy Electronics, Inc.*, 292 Ark. 482, 730 S.W.2d 899 (1987), a case upholding a contract challenged for usury purposes. Autobond, First Fidelity, and Harry Robinson argued below that *Arkansas Appliance Distributing* controls the outcome of this appeal. We agree.

In *Arkansas Appliance Distributing*, Arkansas Appliance Distributing Company (Arkansas Appliance) entered into a contract with Tandy Electronics, Incorporated (Tandy), for a computer and software equipment, but Arkansas Appliance later defaulted on the contract. Tandy demanded return of the equipment, sold the equipment to Radio Shack, and filed suit for the deficiency. The trial court determined that Texas law applied, held the contract and interest valid, and entered a deficiency judgment against Arkansas Appliance, who appealed. This court recognized that, while the parties' contract was initiated in Arkansas, it had been accepted in Texas. Moreover, the contract provided that Texas law would apply, and monthly payments were to be mailed from Arkansas to Texas. The court concluded that the Uniform Commercial Code's provision, allowing parties to choose their own law so long as the jurisdiction chosen bears a reasonable relationship to the transaction in question, was applicable, and that appellate courts typically favor the law of the state that will make the transaction valid rather than void. 292 Ark. at 485, 730 S.W.2d at 900. Finally, this court in *Arkansas Appliance Distributing* held that, since Texas had substantial contacts with the contract in question, and the parties expressed their intention that Texas law would govern, the trial court correctly applied Texas law, making the parties' contract valid. *Id.*

Evans responds that *Huchingson v. Republic Finance Co., Inc.*, 236 Ark. 832, 370 S.W.2d 185 (1963), is more in line with the facts of this case, and therefore, it should control. Evans contends that, in light of *Huchingson*, *Arkansas Appliance Distributing* should be "revisited," suggesting it should be overruled. Evans overlooks several key distinguishing facts in *Huchingson*.

The chief distinguishing feature between the instant case and *Huchingson* is that in *Huchingson* the allegedly usurious contract

contained no choice-of-law provision. As mentioned earlier, Evans's retail installment contract states in the general provisions section that the law of Texas shall govern the transaction. Another important distinguishing feature is that the *Huchingson* court found that the contract was actually executed in Arkansas, because "acceptance and approval" was not necessary in Iowa. Here, acceptance and approval in Texas by First Fidelity was a necessary predicate to Evans's execution of the contract. More particularly, without First Fidelity, Evans could not have purchased the automobile from Harry Robinson. It was confirmed during oral argument that the money for the purchase came from First Fidelity and was transferred to Harry Robinson. Thus, while the contract was initiated in Arkansas by Evans and Harry Robinson, final execution of the contract occurred in Texas. In short, *Huchingson* is still good law, but is inapposite to the facts here.

■ ■ *Arkansas Appliance Distributing*, consequently, is on point, and sets out certain inquiries that are important in determining whether a reasonable relationship exists between Texas and the retail installment contract at issue. For example, a court should look at where the transaction originated, where payments under the transaction were sent, and where the parties to the contract were located. 292 Ark. at 485, 730 S.W.2d at 900. The transaction originated in Arkansas. Yet, all payments under the transaction were mailed by Evans outside Arkansas to First Fidelity and Autobond in Texas. Evans conceded as much at the hearing on the motions of the defendants. Likewise, while Harry Robinson and Evans were in Arkansas, the contract provided that it was being simultaneously assigned to First Fidelity, and gave First Fidelity's Texas address. Given these facts, we conclude that there was a reasonable relationship between Texas and the retail installment contract, making the choice-of-law provision, and therefore the interest charged, valid.

■ A recent decision by the United States Bankruptcy Court for the Eastern District of Arkansas was argued by Autobond and Harry Robinson in further support of their position. *In re Brock*, 214 B.R. 877 (Bkrtcy. E.D. Ark. 1997), aff'd, Op. No. PB-C-97-531 (E.D. Ark. May 11, 1998). That decision is certainly consistent with our analysis in this case. There, a

Chapter 13 debtor, Brock, brought a proceeding against First Fidelity, Autobond, and others on the theory that the financing transaction violated Arkansas usury law. The parties filed cross-motions for summary judgment, but the bankruptcy court upheld the transaction. The facts showed that Brock had purchased an automobile from Harrell Motors d/b/a Pine Dodge GMC in Pine Bluff, Arkansas. Financing was provided by First Fidelity, through its Texas office, and the financing contract was later assigned to various entities including Autobond. Brock, just like Evans, completed the financing documents that were then reviewed and approved in Texas. Brock, also like Evans, admitted that he was aware of First Fidelity's involvement. The contract in *In re Brock* similarly provided that Texas law would govern the transaction. The bankruptcy court, relying on the same rules applied in *Arkansas Appliance Distributing*, held that the facts showed a substantial connection between the contract and the State of Texas, and upheld the parties' contract as valid. *Id.* at 880-881. We believe the court in *In re Brock* was correct and such an analysis would dictate the same result here. In the instant case, no genuine issue of material fact existed, so we affirm the chancellor's granting of summary judgment to Autobond and First Fidelity.

Evans's final point concerns the grant of dismissal to Harry Robinson. The trial court based its dismissal on 15 U.S.C. § 1640. The relevant portion of that provision mandates that an action under the section be brought within one year from the date of the occurrence of the violation. 15 U.S.C. § 1640(e). The record shows that Evans entered into the contract with Harry Robinson on June 6, 1996, but Evans did not file suit until, at the very earliest, June 17, 1997. Clearly, this is beyond the one-year time requirement in 15 U.S.C. § 1640(e). Evans argues, for the first time on appeal, that the one-year statute of limitations had been tolled, and also that, at the least, his claim against Harry Robinson should have been dismissed without prejudice. We have repeatedly held that we will not consider an issue for the first time on appeal. *Western World Ins. Co. v. Branch*, 332 Ark. 427, 965 S.W.2d 760 (1998). Regarding his dismissal without prejudice argument, the trial court's dismissal was based upon Harry Robinson's affirmative statute-of-limitations defense, not on

Robinson's assertion that Evans failed to state facts upon which relief could be granted, as is contemplated under Ark. R. Civ. P. 12(b)(6). Thus, the court's grant of dismissal to Harry Robinson was appropriate, and its decision is affirmed.