John A. SMITH & Wanda L. Smith *v.* Karen A. EISEN

CA 05-1405                                                    245 S.W.3d 160

Court of Appeals of Arkansas
Opinion delivered December 13, 2006

*Odom & Elliott, P.A.*, by: *J. Timothy Smith*, for appellants.

*Robert R. Cloar*, for appellee.

R OBERT J. GLADWIN, Judge. This case is a dispute between a pawn-shop owner and his customer. It involves the question of whether a deed to a house was a true conveyance of the property, with an accompanying agreement between the purchasers (the pawn-shop owner and his wife) and the seller (the customer) that entitled the customer to repurchase the property for twice the amount

of the "sale," or whether it was an equitable mortgage securing a usurious loan. The trial court found that the transaction was a usurious loan secured by an equitable mortgage. We agree and affirm the trial court's finding to that effect. We reverse the denial of attorney's fees to the customer, appellee Karen Eisen, and remand for further proceedings.

Appellee purchased a house in Fort Smith on April 25, 1995, for $75,580.64. In 1996, she had financial difficulties and asked appellant John Smith if he would loan her $15,000 against her house. The parties disagree about the nature of the transaction that followed. According to appellee, John (and his wife, appellant Wanda Smith) agreed to take a deed to the house; put the deed in his safe without filing it; and, upon appellee's satisfaction of the debt, return the deed to her. According to appellants, however, appellee sold her property to them for $15,000 and, in a separate contract, they agreed to reconvey it to her if she paid $250 monthly for ten years, for a total amount of $30,000. On December 4, 1996, appellee signed a warranty deed of her property to appellants and, that same day, all three parties signed the following document on stationery bearing the pawn shop's letterhead:

> I John A. Smith and wife Wanda L. Smith do hereby sell to Karen A. Eisen our property and house located at 3010 So. 34th street, Fort Smith, Ar.
>
> Legal description; [sic] Lot 7 in Block 6 Revised Plat of Lakewood Addition
>
> Under these following agreement [sic].
>
> Karen A. Eisen will pay payments of $250.00 a month begining [sic] January 1st, 1997 and ending with payment of December 1st, 2006. (10 years) Karen A. Eisen will also maintain a [sic] Insurance Policy on the dwelling for at least 75,000.00 dollars, and she will also pay the yearly real estate taxes. She is allowed to make her payment between the 1st and 10th of each month. She may not get more than 2 months behind. She must pay the insurance payments on time and pay the real estate taxes when they are due before penalty time, October 10 of each year. Failure to abide by these obligations automatically makes this contract between seller and buyer terminated.
>
> If Karen A. Eisen pays off loan in advance she must pay all remaining payments due. Also she must pay off loan in full before she can sell house or obtain another Mortgage.

The receipt signed by appellee, for $15,000, "for house and lot located a[t] 3010 So. 34th St. Fort Smith, Arkansas 72903 Lot 7 in Block 6 Lakewood Addition Fort Smith Ark 72903," was dated September 4, 1996. According to appellee, she actually received the $15,000 at the same time that she gave the deed to the property and signed the contract (December 4, 1996). Appellants contend that she received the money on September 4, 1996, and stress that the time that elapsed between those dates supports their argument that these were two separate transactions. Appellants filed the deed on December 4, 1996.

Although appellee did purchase insurance on the property as agreed initially, she did not buy insurance after 1998. Appellee testified that she was unable to obtain a homeowner's policy on a residence that was not in her name; that, when she informed appellant of this fact, he told her not to worry about it, because he had insurance on his other properties; and that he stated that would take care of it. In September 2003, when appellee was late making her payments, appellant told her that the agreement was terminated and that, if she wanted to stay in the house, she would have to pay monthly rent of $400. Appellants contend that they also terminated the agreement because appellee failed to continue homeowner's insurance on the property. Appellee refused to agree to appellants' new terms, and appellants refused to accept further payments of $250 per month.

On November 14, 2003, appellee filed a complaint against appellants, claiming that appellants had loaned her money on December 4, 1996, secured by a deed to her property. She alleged that appellants had "recently" refused her payments and claimed that they owned the property. She asked for revocation of the deed and restoration of title in her name with an accounting of the funds she had paid, all future interest voided, and attorney's fees and costs on the grounds of fraud, conversion, and unjust enrichment. She also asked for damages for the money she had paid in interest plus attorney's fees and costs under Arkansas's usury laws and the Arkansas Deceptive Trade Practices Act.

Appellants filed a motion to dismiss on March 24, 2004, arguing that the statute of limitations for each claim in the complaint had run. They also argued that, under Ark. R. Civ. P. 8(a) and Ark. R. Civ. P. 12(b)(6), appellee had failed to properly plead her causes of action. They filed a counterclaim that same date, alleging that appellee's failure to maintain insurance on the property and her missed payments amounted to a breach of the

agreement; they asked for damages, including rental payments on the property in the amount of $400 per month, beginning October 1, 2003; reimbursement of the premiums for the insurance policy that appellants secured for the property; property taxes they had paid; costs; and attorney's fees. In the alternative, they sought an order permitting them to evict appellee from the premises. The circuit court denied the motion to dismiss on April 20, 2004. Appellants filed their answer on May 4, 2004, denying that the parties had ever entered into a loan agreement and raising the defenses of statute of limitations, statute of frauds, the parol-evidence rule, unclean hands, laches, waiver, and first breach.

On December 6, 2004, appellants moved for summary judgment on the bases of the statute of limitations and appellee's purported failure to establish the elements of her causes of action. In her response to the motion for summary judgment and brief, appellee conceded that the statute of limitations had run on the usurious interest paid more than five years prior to the lawsuit and stated that she had calculated her damages accordingly, requesting judgment for $15,231.26, with all future interest voided and the monthly payments reduced to the amount of principal due. The circuit court denied the motion for summary judgment on January 4, 2005.

On May 18, 2005, appellee filed an amended complaint alleging that she was entitled to a finding that the contract was an equitable mortgage and that she was entitled to revocation of the deed and restoration of record title in her name, along with an accounting, on the grounds of fraud, conversion, and unjust enrichment. She also stated that she was entitled to damages under the usury laws of Arkansas within five years preceding the lawsuit, with all future interest voided, plus attorney's fees and costs under article 19, section 13 of the Arkansas Constitution, which states that the interest rate shall not exceed five percent above the federal discount rate at the time of the contract. According to appellee, the federal discount rate on December 4, 1996, was five percent; therefore, any interest rate above ten percent at that time was usurious. She requested that she recover twice the interest paid within that five-year period and that future interest be voided. Appellee stated that double the amount of interest paid within five years prior to the lawsuit's filing was $15,231.26. She further alleged that she was entitled to damages for the money she had paid in interest within five years preceding the lawsuit, plus attorney's

fees and costs, under the Deceptive Trade Practices Act. In their response, appellants raised the same affirmative defenses as before.

At trial, appellee, appellant John Smith, and a former customer of appellants, Donald Toran, testified. Appellant Wanda Smith did not testify. The trial court entered its order on September 9, 2005. In the order, it found that appellee had approached appellant John Smith about a loan of $15,000 and that he had "agreed to make her a loan conditioned upon [appellee] deeding her residence to him. [Appellant] John Smith told [appellee] that he would not file the deed but would put it in his safe and upon payment of the indebtedness he would return the deed to [appellee]." The trial court stated:

> The law is settled that it is presumed that a deed, here a Warranty Deed, is what it appears to be, and anyone claiming that the deed is in fact a mortgage has to prove by clear, unequivocal and convincing evidence that there was an indebtedness and that . . . the deed was security for the debt. [Appellee] argues that the deed was in fact an equitable mortgage. The [appellants] contend "the transaction was an outright sale and nothing else."

> There are a number of factors that the Court should consider in deciding whether it was an absolute deed or an equitable mortgage. Those include the statements and agreements of the parties, the disparity between the value received by [appellee] and the value of the real estate at the time of conveyance, the fact that the [appellee] retained possession of the residence and the bargaining power and sophistication of the [appellee] and [appellant] John Smith. From the facts presented, the Court finds that the transaction was in reality an equitable mortgage. Accordingly, the Court finds that the Deed is void and title to the residence shall be transferred to [appellee].

> The next question is whether the loan constitutes a usurious loan. As heretofore stated, the real purpose of the transaction was to make a loan to [appellee] in the amount of $15,000.00. In fact, the agreement (Plaintiff's exhibit 5) refers to it being a loan. Since it was a loan, under its terms of paying back $30,000.00 over ten (10) years, the interest rate calculates to be in excess of that allowed by law. The rate is usurious. [Article] 19, Section 13 of the Arkansas Constitution provides that all loans that are usurious "*shall* be void as to the unpaid interest" and that the borrower is entitled to "twice the amount of interest paid." The Arkansas Supreme Court has held

that this is mandatory. The interest paid for the five (5) years preceding the filing of this lawsuit is $8,252.77, doubled to be $16,505.54.

The [appellants] in this matter have a balance due them on the loan in the principal sum of $7,727.69. Deducting that sum from $16,505.54 leaves a balance due [appellee] of $8,777.85. [Appellants] have paid real estate taxes of $818.20 for 2002 and $818.50 for 2003, which should be deducted from $8,777.85 for a balance of $7,141.15. [Appellants] offered evidence of the payment of insurance on the property of $360.00 [Defendants' exhibit 7] which should be deducted from the $7,141.15 for a balance owed [appellee] of $6,781.15. [Appellants] are hereby ordered to pay said sum to the [appellee] within forty-five (45) days of the entry of this Order.

[Appellants'] counterclaim is dismissed. Each side shall bear their own costs and attorney fees.

Appellee filed a motion to reconsider on September 23, 2005. In her motion, she asked that part of the court's September 9, 2005, order — that the parties bear their own attorney's fees and costs — be held in abeyance until she had an opportunity to submit a motion for fees and expenses to the court. In her accompanying brief, appellee stated that she had expected to wait and file her motion for attorney's fees after the judgment; that this motion to reconsider was "not a motion for fees"; and that she would not have filed this motion but for the court's premature ruling on fees. She stated:

The fee issue in the instant case are [sic] being sought not only under the contract statute (16-22-308) but also under the statute specifically for Plaintiffs who prevail in usury cases. (A.C.A. 4-57-108).

The merits of the attorney fees and costs award is not to be decided here. This motion is just asking for the opportunity to submit the issue to the court as that interest rate for the judgment be specified.

On October 5, 2005, appellants asked that the motion be denied because a claim for attorney's fees must be made by motion no later than fourteen days after the entry of judgment. They also filed their notice of appeal on October 5, 2005. On October 11, 2005, the trial

court denied appellee's motion to reconsider. Appellee filed a notice of cross-appeal on October 19, 2005.

## Standard of Review

In bench trials the standard of review on appeal is whether the trial court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Anderson v. Stewart*, 366 Ark. 203, 234 S.W.3d 295 (2006). We give due deference to the superior position of the trial court to determine the credibility of the witnesses and the weight to be accorded their testimony. *Id.* Further, it is within the province of the trier of fact to resolve conflicting testimony. *Id.*

## Arguments

On appeal, appellants argue that the trial court erred in denying their motion to dismiss; in denying their motion for directed verdict; in imposing an equitable mortgage; in holding that the transaction was a usurious loan; and in awarding damages to appellee. For her cross-appeal, appellee contends that the trial court erred in refusing to award her attorney's fees.

## The Motion to Dismiss

Appellants first contend that the trial court erred in denying their motion to dismiss appellee's complaint dated November 14, 2003, on the ground that it failed to state facts upon which relief could be granted. They allege that appellee's complaint stated only conclusions without facts and that she did not state the elements of her causes of action. They argue at length that the complaint did not contain the elements for fraud, conversion, unjust enrichment, usury, or a violation of the Deceptive Trade Practices Act. However, the trial court did not base its decision on fraud, conversion, unjust enrichment, or the Deceptive Trade Practices Act; it simply held that the transaction was in fact a loan secured by an equitable mortgage and that the loan bore a usurious interest rate. Therefore, we will address only the claims concerning appellants' refusal to abide by the parties' agreement and usury. *See Morgan v. Chandler*, 367 Ark. 430, 241 S.W.3d 221 (2006).

In determining whether to dismiss a complaint under Ark. R. Civ. P. 12(b)(6), it is improper for the trial court to look beyond the complaint. *Thomas v. Pierce*, 87 Ark. App. 26, 184 S.W.3d 489 (2004). In order to properly dismiss the complaint, the trial court must find that the complaining party either (1) failed to

state general facts upon which relief could have been granted or (2) failed to include specific facts pertaining to one or more of the elements of one of her claims after accepting all facts contained in the complaint as true and in the light most favorable to the nonmoving party. *Id.* Pleadings are sufficient if they advise a party of his obligations and allege a breach of them. *Id.*

In reviewing the circuit court's decision on a motion to dismiss under Ark. R. Civ. P. 12(b)(6), we treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint. *Key v. Coryell*, 86 Ark. App. 334, 185 S.W.3d 98 (2004). In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint and the pleadings are to be liberally construed. *Id.* However, Arkansas law requires fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. *Id.* According to Ark. R. Civ. P. 8(a)(1), a pleading that sets forth a claim for relief shall contain a statement in ordinary and concise language of facts showing that the pleader is entitled to relief. Rules 12(b)(6) and 8(a)(1) must be read together in testing the sufficiency of a complaint. *Id.* We look to the underlying facts supporting an alleged cause of action to determine whether the matter has been sufficiently pled. *Id.*

In order to state a cause of action for breach of contract, the complaint need only assert the existence of an enforceable contract between the plaintiff and defendant, the obligation of the defendant thereunder, a violation by the defendant, and damages resulting to the plaintiff from the breach. *Rabalaias v. Barnett*, 284 Ark. 527, 683 S.W.2d 919 (1985). Appellee's claim for breach of contract was more than sufficient to survive the motion to dismiss. She asserted that appellants had loaned her money on December 4, 1996, secured by a deed to her property, and that they had "recently" refused her payments and claimed that they owned the property. She attached a copy of the December 4, 1996, repurchase agreement to her complaint. Arkansas Rule of Civil Procedure 10(c) provides that a copy of any written instrument that is an exhibit to a pleading is a part thereof for all purposes.

Even though the usury claim, of itself, was not sufficiently pled, we will not reverse on this issue, because the breach-of-contract claim was sufficiently pled, and appellee later filed an amended complaint that adequately set forth her usury claim. Thus, appellants suffered no prejudice. We will not reverse

unless error and prejudice have been shown. *Martin v. Scharbor*, 95 Ark. App. 52, 233 S.W.3d 689 (2006).

## The Statute of Limitations

Appellants also contend that appellee failed to state a claim within the applicable statute of limitations. The statute of limitations that applies here is the one for breach of a written contract, Ark. Code Ann. § 16-56-111 (Repl. 2005); it applies to the claim that appellants failed to abide by their agreement and to the usury claim, which was based on a written contract. A statute of limitations does not begin to run until the plaintiff has a complete and present cause of action. *Oaklawn Bank v. Alford*, 40 Ark. App. 200, 845 S.W.2d 22 (1993). The period of limitations for contracts runs from the point at which the cause of action accrues. *Id.* For breach of contract, the true test in determining when a cause of action arises or accrues is to establish the time when the plaintiff could have first maintained the action to a successful conclusion. *Id.* A cause of action for breach of contract accrues the moment the right to commence an action comes into existence, and occurs when one party has, by words or conduct, indicated to the other that the agreement is being repudiated or breached. *Id.* In ordinary contract actions, the statute of limitations begins to run upon the occurrence of the last element essential to the cause of action. *Id.*; accord *Dupree v. Twin City Bank*, 300 Ark. 188, 777 S.W.2d 856 (1989).

Although appellee gave appellants the deed and signed the contract to repurchase on December 4, 1996, appellants did not breach the contract until September 2003. In her November 14, 2003, complaint, appellee noted that the contract was dated December 4, 1996, and stated: "Plaintiff has made many payments on the loan but recently the Defendants refused further payments and claimed the payments were merely rent that they own the property." Appellee attached a copy of the contract to her complaint. Even though appellee stated that appellants had "recently" refused her payments and asserted their ownership of the property, it was not clear, on the face of the complaint, that the statute of limitations had run. Appellee's complaint, therefore, was sufficient to avoid the application of the five-year statute of limitations as to the contract issue and, because the payments were to be made monthly, as to all usurious payments of interest within five years of the filing of the complaint on November 14, 2003.

### The Motion for Directed Verdict

Appellants contend in their third point that the trial court erred in denying their motion for directed verdict at trial. As with the previous two points, we need only consider whether appellee presented sufficient evidence to survive the motion for directed verdict as to her claim that appellants had failed to perform their obligations under a transaction that was, in fact, an equitable mortgage securing a loan and her claim that the loan bore a usurious interest rate. According to appellants, the evidence simply demonstrated that the parties entered into two separate transactions on September 4, 1996, and on December 4, 1996, concerning one piece of property. We disagree.

■ A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Calvary Christian Sch., Inc. v. Huffstuttler*, 367 Ark. 117, 238 S.W.3d 58 (2006). A trial court's duty is to review a motion for directed verdict or dismissal at the conclusion of a plaintiff's case by deciding whether, if it were a jury trial, the evidence would be sufficient to present to the jury. *Woodall v. Chuck Dory Auto Sales, Inc.*, 347 Ark. 260, 61 S.W.3d 835 (2001). In making that determination, the trial court does not exercise fact-finding powers that involve determining questions of credibility. *Id.* If the evidence is such that fair-minded persons might reach different conclusions, then a jury question is presented. *Id.* As discussed below, the evidence more than sufficiently supports the trial court's decision on the breach-of-contract and usury issues. Therefore, it did not err in denying the motion for directed verdict.

### Equitable Mortgage

Appellants next argue that the trial court erred in finding that the transaction constituted an equitable mortgage. They contend that this case simply involved an outright conveyance of a deed in exchange for $15,000 and a separate agreement to reconvey the property for $30,000. They assert that appellee failed to prove by clear, unequivocal, and convincing evidence that the deed was intended to act as security for an obligation, pointing out that the receipt for $15,000 made no mention of a mortgage and was dated on September 4, 1996, three months before appellee gave the deed to appellants.

In attempting to discern the real character of a transaction, the trial court should consider all of the written and oral evidence

and focus on the intent of the parties in the light of all attendant circumstances. *Bright v. Gass*, 38 Ark. App. 71, 831 S.W.2d 149 (1992). In carrying out the true intent of the parties, the trial court properly looks beyond the mere form in which the transaction was clothed and considers all the facts and circumstances of the transaction, the conduct of the parties, and their relations to one another and to the subject matter. *Id.* Conclusions concerning the true intent of the parties primarily involve issues of fact, and the trial court's decision on such cases will not be reversed unless they are clearly erroneous. *Id.*

The presumption arises that a deed is what it purports to be and, to establish its character as a mortgage, the evidence must be clear, unequivocal, and convincing. *Wensel v. Flatte*, 27 Ark. App. 5, 764 S.W.2d 627 (1989). If there is a debt existing and the conveyance was intended by the parties to secure its payment, equity will regard and treat an absolute deed as a mortgage. *Id.* The party claiming that the deed was a mortgage has the burden of showing that the deed was in fact a mortgage, that there was an indebtedness, and that the deed was intended to secure the debt. *Id.* Because the equity upon which the court acts arises from the real character of the transaction, any evidence, written or oral, tending to show the real nature of the transaction is admissible. *Id.*; accord *Ehrlich v. Castleberry*, 227 Ark. 426, 299 S.W.2d 38 (1957); *Newport v. Chandler*, 206 Ark. 974, 178 S.W.2d 240 (1944); *Monaghan v. Davis*, 16 Ark. App. 258, 700 S.W.2d 375 (1985).

■ Appellee testified that she bought the house for $75,580.64 in 1995; that she needed money for an "ice box, hot water tank, two new toilets, $6,000 for two dental implants and [she] had to paint the house"; that she asked John Smith if he would loan her $15,000 against her house; that he told her that she had to sign a deed to get the loan but that he would keep the deed in his safe until she paid off the loan, when he would return it; that she signed the deed, not believing that she had sold her house; that, although she fell behind in her payments occasionally, she got caught up; and that John Smith accepted her payments until September 2003. She was emphatic that she had not sold her home to appellants. Appellant John Smith disputed appellee's account of the events. As the finder of fact, it was within the trial court's province to believe or disbelieve the testimony of any witness, including Mr. Smith. *Found. Telecomms., Inc. v. Moe Studio, Inc.*, 341 Ark. 231, 16 S.W.3d 531 (2000). We affirm on this issue.

*Usury*

Without conceding that this transaction was a loan, appellants further argue that appellee failed to prove that the interest rate on the loan was usurious as contemplated by article 19, section 13 of the Arkansas Constitution. That section states that the maximum lawful rate of interest on any contract shall not exceed five percent over the federal reserve discount rate at the time of the contract's formation and that all contracts with an interest rate in excess of that rate shall be void as to the unpaid interest; a person who has paid interest in excess of the maximum lawful rate may recover, within the time prescribed by law, twice the amount of interest paid. They assert that neither the September 4, 1996 receipt nor the December 4, 1996 contract reflects an interest rate or a sale price. Essentially, appellants' argument on this point is a re-argument that the transaction was not a loan secured by an equitable mortgage. They do not attack the accuracy of the calculations on the exhibits introduced by appellee, which showed that the annual percentage rate of the loan was 15.864%, which was more than five percent over the federal discount rate when the contract was entered into.

Usury occurs when a lender charges more than the legally permissible maximum rate of interest, defined by Article 19, section 13 of the Arkansas Constitution, as amended by Amendment 60. *Evans v. Harry Robinson Pontiac-Buick, Inc.*, 336 Ark. 155, 983 S.W.2d 946 (1999). For an agreement to be usurious, it must be so at the time it was entered into. *Id.* The party asserting usury has the burden of proof, and the proof must be sustained by clear and convincing evidence. *Id.* The intention to charge a usurious rate of interest will never be presumed, imputed, or inferred where the opposite result can be fairly and reasonably reached. *Id.*

Courts in Arkansas are obligated to look beyond the four corners of the document in question to determine, considering all of the attendant facts and circumstances, if the contract is usurious in effect. *Carter v. Four Seasons Funding Corp.*, 351 Ark. 637, 97 S.W.3d 387 (2003). In *McElroy v. Grisham*, 306 Ark. 4, 810 S.W.2d 933 (1991), the supreme court addressed an argument like appellants':

> In denying that the transactions amounted to a usurious loan, the appellees first contend that the documents were not usurious on their face. While it is true that, taken alone, the original warranty deed and option contract appear to be documents concerning only

the sale of land, and no mention of a loan or obligation on the part of Mr. McElroy to repay the appellees is recited, these transactions call to mind an oft quoted maxim: "The law shells the covering and extracts the kernel. Names amount to nothing when they fail to designate the facts." *Sparks v. Robinson*, 66 Ark. 460, 51 S.W. 460 (1899). In *Sparks*, we upheld the trial court's conclusion that an absolute bill of sale of a sewing machine, coupled with an absolute right of redemption, amounted to nothing more than a mortgage with a usurious rate of interest.

Here, the chancellor found that the purported sale and option to repurchase were nothing more than a cloaking device to hide the true transaction — a loan in the amount of $80,000 to be repaid in two years, with interest totalling $40,000. Such a transaction has been historically recognized as one of several simple devices to evade Arkansas usury laws. *See* G. Collins and V. Ham, *The Usury Law of Arkansas: A Study in Evasion*, 8 Ark. L. Rev. 399 (1954).

306 Ark. at 8-9, 810 S.W.2d at 935-36.

The supreme court's language in *Commercial Credit Plan, Inc. v. Chandler*, 218 Ark. 966, 972, 239 S.W.2d 1009, 1012 (1951), also bears repeating here:

We have held that collateral contracts entered into contemporaneously with a contract for the lending and borrowing of money, where the collateral agreement is in itself lawful and made in good faith, will not invalidate the contract for the loan of money as usurious, although its effect might be to exact more from the borrower than the sum which would accrue to the lender from a legal rate of interest. *Hogan v. Thompson*, 186 Ark. 497, 54 S.W.2d 303. But it is equally well settled that where, as here, the primary purpose is to lend money through multiple transactions devised to cloak the real intent to collect excessive interest, courts will analyze the scheme and ascribe to it the contemplated purpose, disregarding as preconceived emergency defenses such language as that found in appellant's note limiting recovery to the actual amount loaned.

The test for usury is not whether the lender intended to violate the usury laws but whether the lender knowingly entered into a usurious contract intending to profit by the methods employed. *McElroy v. Grisham, supra*. Further, it is unnecessary that both parties intend that an unlawful rate of interest be charged; if

the lender alone charges or receives more than is lawful the contract is usurious. *Id.* As the supreme court explained in *McElroy v. Grisham*, all attendant circumstances must be taken into consideration in deciding whether a transaction is usurious: the "seller's" obvious financial troubles; her expressed intent to keep the property; her remaining in possession of the property; the substantial disparity between what she paid for the property and the "purchase" price; and the immediate renegotiation of a contract for resale all point to the conclusion that none of the parties intended for the property to come into the hands of appellants any more than was necessary to secure the loan and for appellants to make a profit from such loan. Also relevant were appellee's ninth-grade education, her medical disabilities, and her lack of sophistication in business matters in comparison to appellants'. When the intent to commit usury is not apparent on the face of the challenged document, the question of whether a lender possessed the requisite intent is for the finder of fact to decide. *Hickman v. Courtney*, 361 Ark. 5, 203 S.W.3d 632 (2005). We hold that the trial court did not err in finding that this loan was usurious.

### Damages

In appellants' next point, they contend that, if we find that the trial court did not err regarding the usurious nature of the loan, the court's finding of fact as to the amount of damages was clearly erroneous. They concede that the trial court correctly deducted the amount they paid in property taxes, and they do not dispute the actual computation of the usurious interest. Instead, they argue that appellee breached the contract when she failed to carry insurance on the property and to make timely payments, of which they became aware in September 2003; therefore, they argue, the contract should be terminated and appellee should be held responsible for monthly rent of $400 from October 1, 2003, through the present. They also ask us to hold that appellee should be evicted from the property. They contend that the trial court erred in failing to recognize that appellee had breached the contract before she brought this lawsuit. We reject this contention because it is nothing more than a re-argument of their position that this transaction was not an equitable mortgage securing a usurious loan.

*Appellee's Cross-Appeal*

For her cross-appeal, appellee argues that the trial court erred in refusing to award her attorney's fees under Ark. Code Ann. § 4-57-108 (Repl. 2001), the Deceptive Trade Practices Act, or under Ark. Code Ann. § 16-22-308 (Repl. 1999). She points out that the trial court denied fees to her in its original order, before she had the opportunity to file a post-judgment motion for fees. In her motion to reconsider filed on September 23, 2005, fourteen days after judgment, she asked for the opportunity to file such a motion. Appellee concedes that, under Ark. R. Civ. P. 54(e), she was required to file her post-trial motion for attorney's fees within fourteen days of the judgment but points out that she had already been denied her fees in the judgment. We agree with appellee that her request for attorney's fees was timely.

■ Because the trial court did not base its decision on the Deceptive Trade Practices Act, an award of fees under that act would not be appropriate. However, Ark. Code Ann. § 4-57-108 provides that there shall be an award of attorney's fees in usury cases involving consumer loans and credit sales, which, under article 19, section 13 of the Arkansas Constitution, include credit extended to a natural person in which the money, property, or service that is the subject of the transaction is primarily for personal, family, or household purposes. Because the wording of this statute was mandatory, an award of attorney's fees was required. We therefore reverse on this point and remand for the trial court to take evidence on the issue of attorney's fees and to enter an appropriate award to appellee.

Affirmed on direct appeal; reversed and remanded on cross-appeal.

PITTMAN, C.J., and ROBBINS, J., agree.