2010 Ark. App. 438

**KENNEDY FUNDING, INC., Appellant**

v.

**Virgil W. SHELTON, et al., Appellees.**

**No. CA 09–79.**

Court of Appeals of Arkansas.

May 19, 2010.

David B. Vandergriff, Quattlebaum, Grooms, Tull & Burrow PLLC, Little Rock, for appellant.

Morgan E. Welch, Welch and Kitchens, LLC, North Little Rock, James Gerard Schulze, Baker & Schulze, Little Rock, for appellees.

COURTNEY HUDSON HENRY, Judge.

In this appeal from a foreclosure decree, the Circuit Court of Pulaski County awarded judgment on a promissory note in the amount of $635,444.87 with accumulated interest from the date of default to the day of trial. For reversal, appellant Kennedy Funding, Inc., a junior lienholder, argues that the note executed in favor of appellees Virgil Shelton, Beverly Shelton, and John Shelton,[1] the superior lienholders, was usurious on its face and that the circuit court erred in ruling otherwise. Kennedy Funding also contends that the circuit court erred in awarding the Sheltons interest upon interest. We find no merit in these arguments and affirm.

In 1992, Shelton sold Will and Rita Acklin certain real property in Pulaski County on which Shelton operated the Rest in Peace Cemetery. Shelton provided owner financing, and the Acklins executed a promissory note and mortgage in favor of Shelton. The note does not specify the principal amount of the purchase price. Instead, the parties structured the note to contain four methods of payment. Paragraph (a) of the note provided for a payment of $50,000 to be paid on November 2, 1992. Paragraph (b) required the sum of $100,000 to be paid in semi-annual payments beginning May 15, 1993, at an interest rate of eight percent. Paragraph (c) obligated the Acklins to make quarterly payments of an unspecified amount that was to be equal to the income generated by the perpetual care trust fund.[2] Additionally, paragraph (d) of the note provided for monthly payments totaling $4,825.20 to be made beginning December 1, 1992, and continuing for a period of twenty years.[3] The final paragraph of the note addressed the ramifications of default. The last sentence of this paragraph states that, where an annual rate of interest had not been specified in the above terms, the terms "were calculated" on the rate of eight percent per annum.

In 1999, the Acklins encountered financial difficulties, which led them to borrow money from Kennedy Funding and to execute a promissory note and mortgages on several parcels of real property, including the Rest in Peace Cemetery, in favor of Kennedy Funding. In connection with that transaction, Virgil Shelton executed

---

1. Beverly Shelton and John Shelton are Virgil Shelton's children. We collectively refer to them as Shelton unless the context requires otherwise.

2. This amount was to be paid to Virgil Shelton for life and then to his wife for her life, if she survived him.

3. The payment listed in paragraph (d) was apportioned between Virgil Shelton and his two children.

an "Estoppel Certificate" stating that, as of January 14, 1999, the outstanding principal and interest balance of the loan from Shelton to the Acklins was not more than $675,000; that the Acklins were not in default; that Shelton's mortgage and note had not been modified, amended, or supplemented; and that the mortgage was Shelton's only security for the loan.

On October 6, 2000, Kennedy Funding initiated foreclosure proceedings against the Acklins, serving the Acklins, Shelton, and various other defendants who held mortgages on the real property made the subject of the foreclosure action. The circuit court entered a foreclosure decree on January 17, 2001, awarding judgment against the Acklins and various entities owned by them, and judgment in rem against four parcels of land, including the cemetery property, in favor of Kennedy Funding. The Rest in Peace Cemetery went into receivership prior to October 2001.

The trial court scheduled a judicial sale of the property for March 23, 2006. On March 21, 2006, Shelton filed a motion to stay the foreclosure sale or, in the alternative, to amend the foreclosure order, contending that the foreclosure decree was ambiguous as to whether his interest in the property would be foreclosed by a sale. The circuit court entered an order staying the sale pending a hearing.

On May 22, 2006, the circuit court entered an order finding that Shelton's interest was superior to that of Kennedy Funding and that Kennedy Funding had a second lien on the cemetery property subject to the Shelton's superior mortgage interest. This court later affirmed that determination. *Kennedy Funding, Inc. v. Shelton*, 100 Ark.App. 84, 264 S.W.3d 555 (2007).

After the circuit court issued its decision that resulted in the earlier appeal, Shelton filed the present complaint in foreclosure, later amended, on July 17, 2006. Kennedy Funding answered, denying the material allegations of the complaint and asserting the defense of usury.

The case proceeded to a bench trial on July 29, 2008. The parties stipulated that Shelton held a first mortgage on the property and that the maximum interest rate allowable at the time of the transaction in 1992 was eight percent. The parties informed the court that they disagreed as to the principal amount owed to Shelton. Counsel for Kennedy Funding also alerted the court of its contention that the income stream contained in paragraph (c) of the note constituted interest that would render the note usurious. Counsel stated that no proof would be offered on this point, however, alleging that the note spoke for itself.

Virgil Shelton testified that he founded the Rest in Peace Cemetery in 1967 and operated it for twenty-five years before selling it to the Acklins. He described the four different payments that the Acklins were to make under the note. He said that the Acklins long ago paid the $150,000 referenced in paragraphs (a) and (b) of the note and that the Acklins had made the remaining payments under paragraphs (c) and (d) until they defaulted in July 2001. In establishing the amount that he claimed was due on the note, Shelton gave testimony and also introduced into evidence an exhibit outlining his calculations. Shelton began with the figure of $675,000, the amount stated in the Estoppel Certificate when Kennedy Funding made its loan to the Acklins in 1999. Shelton then gave the Acklins credit for $38,555.13 in payments that they made from 1999 to 2001, when they defaulted. He thus claimed that the Acklins owed $636,444.87 on the note. To this amount, Shelton added eight-percent interest from the time of default to the date of trial. Also in his testimony, Shelton

introduced as an exhibit an amortization schedule of the payments owed on $675,000. Based on this schedule, he said that the monthly payment under paragraphs (c) and (d) amounted to $5,665.20. As included in his calculations, Shelton stated that the monthly income from the perpetual care trust fund was $840, based on an average of thirty payments made by the Acklins pursuant to paragraph (c) of the note. On cross-examination, Shelton admitted that the note itself did not specify a sum certain in principal to be paid over the life of the note.

At the conclusion of the hearing, the circuit court questioned the attorneys as to whether prejudgment interest was to be compounded or based on simple interest. The court decided that the latter was in order and instructed Shelton's counsel to prepare a decree based on the principal figure Shelton provided in his testimony, plus simple interest. The court also rejected Kennedy Funding's argument that the note was usurious. The circuit court entered its decree on August 21, 2008.[4] In the decree, the court found that, as of July 17, 2001, the Acklins owed $635,444.87 in unpaid principal plus accrued interest of $357,167.03 through July 29, 2008. The circuit court declared that the judgment was superior to all other liens and claims, including those of Kennedy Funding. The court ordered the property sold if the judgment was not satisfied within ten days from the entry of the decree.

Kennedy Funding timely filed a motion for new trial, asserting that Shelton failed to carry his burden of proving the amount due. Kennedy Funding also filed a motion to amend the judgment, asserting that the payments based on the income derived from the perpetual care trust fund amounted to illegal interest, rendering the note usurious. The court denied the motion for new trial and motion to amend the judgment by separate orders entered on October 1, 2008. This appeal followed.

In its first point, Kennedy Funding argues that the note secured by Shelton's first mortgage was usurious. Based on the language contained in the last sentence of the note, it contends that the stream of income payments contained in paragraph (c) of the note "were calculated" at the maximum rate of interest and that the additional profit participation included in the paragraph resulted in a rate of return that exceeds the Arkansas usury limit.

Usury occurs when a lender charges more than the legally permissible maximum rate of interest, defined by Article 19, section 13 of the Arkansas Constitution, as amended by Amendment 60. *Smith v. Eisen*, 97 Ark.App. 130, 245 S.W.3d 160 (2006). For an agreement to be usurious, it must be so at the inception of the transaction. *See Evans v. Harry Robinson Pontiac–Buick, Inc.*, 336 Ark. 155, 983 S.W.2d 946 (1999). The party asserting usury has the burden of proof, and the proof must be sustained by clear and convincing evidence. *Id.* Usury will not be presumed, imputed, or inferred where an opposite result can be fairly and reasonably reached. *Hickman v. Courtney*, 361 Ark. 5, 203 S.W.3d 632 (2005).

Under paragraph (c), the Acklins were to pay on a quarterly basis an amount equal to the income generated by the perpetual care trust fund. Obviously, these payments were indeterminate and variable, based on whatever earnings the fund might yield. We thus find it difficult to conceive how the payments "were calculated" to include interest. Therefore, we reject Kennedy Funding's interpretation of

---

4. The court twice amended the decree. However, no issues are raised concerning the provisions changed in the amended decrees.

the note that the payments made under this provision included a charge of interest. Because the note is not usurious on its face, Kennedy Funding bore the burden of proving that the note was usurious. *Evans, supra.*

The test for usury is to determine the amount that the borrowers would pay on the principal at the maximum rate of interest, and then compare that amount to what would actually be paid. *Davidson v. Commercial Credit Equip. Corp.,* 255 Ark. 127, 499 S.W.2d 68 (1973); *McDougall v. Hachmeister,* 184 Ark. 28, 41 S.W.2d 1088 (1931). Parol evidence has long been considered admissible for the purpose of showing usury. *Aclin Ford Co. v. Cordell,* 274 Ark. 341, 625 S.W.2d 459 (1981); *Heidelberg S. Sales Co. v. Tudor,* 229 Ark. 500, 316 S.W.2d 716 (1958); *Tillar v. Cleveland,* 47 Ark. 287, 1 S.W. 516 (1886). However, Kennedy Funding did not offer any proof on this issue and, therefore, failed to carry its burden of proving that the note was usurious.

Kennedy Funding's second argument is that the circuit court erred in awarding accrued interest to Shelton because the note provided that interest was already included in the payments owed to Shelton. This issue fails for the same reason as the first. We also find that the argument is contrary to the evidence presented at trial that the circuit court relied upon in reaching its decision.

In his testimony Virgil Shelton represented that the $675,000 contained in the January 1999 Estoppel Certificate was *principal* only, the amount required to pay off the note. In calculating the amount presently owed, Shelton testified that he gave the Acklins credit for $38,555.13 in *principal,* leaving a *principal* balance of

$636,444.87. Shelton claimed interest of $482,518 from the time the Acklins defaulted in July 2001 until the time of trial in July 2008. How Shelton arrived at this figure is not explained. Nevertheless, the circuit court accepted, as a matter of fact, Shelton's calculation of the principal amount owed at the time of default.[5] However, the court allowed only $357,167.03 in simple interest for the seven-year period between the time of default and the time of trial, during which time Shelton did not have use of the money.

Prejudgment interest is awarded for the period of time in which the recovering party has been deprived of the use of money or property. *USAA Life Ins. Co. v. Boyce,* 294 Ark. 575, 745 S.W.2d 136 (1988). Prejudgment interest is allowed because one who has use of another's money should be justly required to pay interest from the time it lawfully should have been paid. *Home Mut. Fire Ins. Co. v. Jones,* 63 Ark.App. 221, 977 S.W.2d 12 (1998). The sum awarded is consistent with an award of prejudgment interest in that it is roughly eight percent of the principal amount for the seven years between default and trial. In our view, the circuit court did nothing more than award prejudgment interest. Although the note may mention eight-percent interest in the catch-all provision, the testimony establishing the deficiency, believed by the circuit court, involved *principal* only without an interest component. Accordingly, we find no merit in this argument.

Affirmed.

ROBBINS and GRUBER, JJ., agree.

---

5. The circuit court awarded Shelton judgment for $635,444.87 instead of $636,444.87 as testified to by Shelton. This discrepancy is not explained, and the parties do not take issue with the amount.